11 CIV 4887



| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | CG7285 |

CINDY PEIDRAHITA,

        Plaintiff,

-against-

THE CITY OF NEW YORK, DET. WILMER ZAMBRANO, DET. JAMES LAKE and P.O.s "JOHN DOE" #1-5 (said names being fictitious, as the true names are presently unknown), Individually and in their Official Capacities.

        Defendants.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, CINDY PEIDRAHITA, by her attorneys, MYERS, SINGER & GALIARDO, LLP, complaining of the defendants, respectfully alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff brings this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. §§ 1983, 1988, for the wrongful acts of Defendants THE CITY OF NEW YORK, DET. WILMER ZAMBRANO, DET. JAMES LAKE and P.O.s "JOHN DOE" #1-5 (said names being fictitious, as the true names are presently unknown), as Officers of the New York City Police Department, all acting under color of state law and pursuant to their authority, in violation of Plaintiff's rights, as said rights are secured by said statutes and the Constitutions of the State of New York and the United States.

## JURISDICTION

2. This action is brought pursuant to 42 U.S.C. §§ 1983, 1988, and the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

3. Jurisdiction is invoked herein pursuant to the aforementioned statutory and constitutional provisions and pursuant to 28 U.S.C. §§ 1331, 1343, this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

## VENUE

4. Venue is properly laid in this District under 28 U.S.C. § 1391(b), this being the District in which the claim arose.

## TRIAL BY JURY

5. Plaintiff demands a trial by jury on each and every one of his claims as pled herein pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6. At all times relevant hereto, Plaintiff, an Hispanic-American, was and is a resident of New York, New York, located in the Southern District of New York.

7. At all times relevant hereto, defendant THE CITY OF NEW YORK (hereinafter, "NYC") is a municipality of the State of New York and owns, operates, manages, directs and controls the New York City Police Department, which employs the other named Defendants.

8. At all times relevant to this action, defendants DET. WILMER ZAMBRANO, DET. JAMES LAKE and P.O.s "JOHN DOE" #1-5 (said names being fictitious, as the true

names are presently unknown), are and were police officers employed by the New York City Police Department (hereinafter, "NYPD"), and acting under color of state law. They are being sued in both their individual and official capacities.

9. At all times relevant hereto and in all their actions described herein, said Defendants were acting under color of the statutes, ordinances, regulations, policies, customs and usages of the NYPD and NYC, pursuant to their authority as employees, servants and agents of the NYPD within the scope of employment and incidental to their otherwise lawful duties and functions as employees, servants, agents and police officers.

10. NYC was responsible for the hiring, training, supervision, discipline, retention and promotion of the police officers, sergeants, and/or employees of the NYPD.

## FACTS

11. On December 10, 2010, at approximately 5:30 p.m., in a bar named the "Donnybrook" located at or about 35 Clinton Street, New York, New York, the defendant police officers claim to have observed a drug transaction involving an individual named David Finno.

12. The police officers arrested Mr Finno for allegedly handing drugs to another individual at that time and location. Mr. Finno denied all charges. Nevertheless, Mr. Finno was prosecuted in New York County Criminal Court. On or about February 25, 2011, all charges were dismissed against Mr. Finno by motion of the District Attorney's Office.

13. Plaintiff CINDY PEIDRAHITA is a friend of David Finno. She learned of his arrest shortly after it had occurred when the defendant police officers called her to the precinct to retrieve some of Mr. Finno's personal belongings while his arrest was being processed.

14. The defendant police officers had obtained plaintiff's telephone number by repeatedly requesting it from Mr. Finno.

15. When plaintiff arrived at the precinct, Mr Finno swore his innocence and told both the police and plaintiff that there was a surveillance camera in the "Donnybrook" which would demonstrate his innocence.

16. On or about December 14, 2010, in the late afternoon, plaintiff stopped by the "Donnybrook" and asked whether she could obtain a copy of the December 10, 2010, surveillance film. The bar manager told her "no" and said he would only consider the request from Mr. Finno's lawyer or law enforcement. Plaintiff left the location and went home.

17. About an hour later, plaintiff received two "missed" phone calls on her cell phone. She returned the calls and an individual told her he had "everyone's copy of the surveillance video tape".

18. Plaintiff thought she was speaking to a manager at the Donnybrook and assumed that they had changed their mind about sharing the tape.

19. Plaintiff told the caller she would stop in the morning to pick it up. He insisted that she "come by tonight".

20. Some time later, plaintiff took her dogs for a walk to the Donnybrook to pick up the surveillance tape. When she arrived at the location, plaintiff waited outside and called the telephone number again and indicated she had arrived to pick up the tape.

21. Moments later, a police van pulled up and asked plaintiff if she wanted the tape, then told her "you have to come with us". The police officers then took plaintiff into custody.

22. The police officers threatened to drop plaintiff's dogs off at the ASPCA, but after plaintiff pleaded with them eventually allowed her to drop them off at home prior to taking her to the precinct.

23. At the precinct, the defendant police officers asked plaintiff a number of questions about David Finno and then told her that she was being arrested for a felony for "tampering with evidence". Plaintiff asked how that was possible. She indicated that she had merely requested a copy of the videotape and had been denied.

24. Without answer or justification, Plaintiff was held for several hours thereafter at the precinct.

25. In the early morning hours of December 15, 2010, the Police Officers unjustly and without probable cause arrested Plaintiff, upon information and belief, for the alleged crime of Tampering with Evidence.

26. The Police Officers then handcuffed Plaintiff and transported her to the Central Booking, where she remained incarcerated.

27. On December 15, 2010, at approximately 7:00 pm, the New York County District Attorney's Office, finding no basis for the arrest of plaintiff, declined to prosecute the case and issued a so-called "cut slip". Plaintiff was released.

28. Prior to her release, Plaintiff spent approximately 24 hours in custody.

### FIRST CLAIM FOR RELIEF:
### DEPRIVATION OF FEDERAL CIVIL RIGHTS

29. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 28 with the same force and effect as if fully set forth herein.

30. All of the aforementioned acts of Defendants, their agents, servants and employees were carried out under color of state law.

31. All of the aforementioned acts deprived Plaintiff, CINDY PEIDRAHITA, of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States and in violation of 42 U.S.C. § 1983.

32. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto.

33. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and rules of NYC and the NYPD, all under the supervision of ranking officers of said department.

34. Defendants, collectively and individually, while acting under color of state law, engaged in conduct which constituted a custom, usage, practice, procedure or rule of his/her respective municipality/authority, which is forbidden by the Constitution of the United States.

35. By these actions, these Defendants have deprived Plaintiff of rights secured by the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983, for which the Defendants are individually liable.

## SECOND CLAIM FOR RELIEF:
## CONSPIRACY TO VIOLATE CIVIL RIGHTS

36. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 35 with the same force and effect as if fully set forth herein.

37. All of the aforementioned Defendants conspired to violate Plaintiff's civil rights by agreeing among themselves to falsely charge Plaintiff with crimes and testify falsely, as described above, in violation of 42 U.S.C. § 1985, for which the Defendants are individually liable.

## THIRD CLAIM FOR RELIEF:
## FALSE AREST UNDER 42 U.S.C 1983

38. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 37 with the same force and effect as if fully set forth herein.

39. As a result of Defendants' aforementioned conduct, Plaintiff, CINDY PEIDRAHITA, was subject to an illegal, improper and false arrest by the Defendants and taken into custody and caused to be falsely imprisoned, detained, confined, incarcerated and prosecuted by the Defendants in criminal proceedings, without any probable cause, privilege or consent.

40. As a result of the foregoing, Plaintiff's liberty was restricted for an extended period of time, and she was put in fear for her safety and subjected to handcuffing, and other physical restraints, without probable cause.

41. As a result of her false arrest, Plaintiff was subjected to humiliation, ridicule and disgrace. Plaintiff was discredited in the minds of many members of the community.

## FOURTH CLAIM FOR RELIEF:
## MALICIOUS ABUSE OF PROCESS UNDER 42 U.S.C. 1983

42. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 41 with the same force and effect as if fully set forth herein.

43. Defendants issued legal process to place Plaintiff under arrest.

44. Defendants arrested Plaintiff in order to obtain a collateral objective outside the legitimate ends of the legal process.

45. Defendants acted with intent to do harm to Plaintiff without excuse or justification.

## FIFTH CLAIM FOR RELIEF:
## MUNICIPAL LIABILITY

46. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 45 with the same force and effect as if fully set forth herein.

47. Defendant Police Officers DET. WILMER ZAMBRANO, DET. JAMES LAKE and P.O.s "JOHN DOE" #1-5 (said names being fictitious, as the true names are presently unknown), arrested CINDY PEIDRAHITA despite a complete lack of evidence against her, notwithstanding their knowledge that said arrest would jeopardize Plaintiff's liberty, well-being, safety and constitutional rights.

48. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials, with the entire actual and/or apparent authority attendant thereto.

49. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials pursuant to the customs, policies,

usages, practices, procedures and rules of NYC and the NYPD, all under the supervision of ranking officers of said department.

50. The aforementioned customs, policies, usages, practices, procedures and rules of NYC and the NYPD included, but were no limited to, initiating and continuing criminal proceedings without evidence of criminal activity.

51. The foregoing customs, policies, usages, practices, procedures and rules of NYC and the NYPD constituted a deliberate indifference to the safety, well-being and constitutional rights of Plaintiff CINDY PEIDRAHITA.

52. The foregoing customs, policies, usages, practices, procedures and rules of NYC and the NYPD were the direct and proximate cause of the constitutional violations suffered by Plaintiff CINDY PEIDRAHITA as alleged herein.

53. The foregoing customs, policies, usages, practices, procedures and rules of NYC and the NYPD were the moving force behind the constitutional violation suffered by Plaintiff CINDY PEIDRAHITA as alleged herein.

54. Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating the constitutional rights of Plaintiff CINDY PEIDRAHITA.

55. Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers, and were directly responsible for the violation of Plaintiff's constitutional rights.

56. Defendant NYC, as municipal policymaker in the training and supervision of Defendant police officers, have pursued a policy and custom of deliberate indifference to the rights of persons in their domain who suffer violation of their right to freedom from

the use of excessive and unreasonable force and freedom from deprivation of Liberty without Due Process of law in violation of the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983, and the Constitution and laws of the State of New York.

57. All of the foregoing acts by Defendants deprived Plaintiff CINDY PEIDRAHITA of federally protected rights, including, but not limited to, the right:

    a. Not to be deprived of liberty without due process of law;

    b. To be free from seizure and arrest not based upon probable cause;

    c. To be free from unlawful imprisonment;

    d. To be free from unwarranted and malicious criminal prosecution;

    e. To be free from intentional assault and infliction of emotional distress;

    f. Not to have cruel and unusual punishment imposed upon him; and

    g. To receive equal protection under the law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and prays for the following relief, jointly and severally, against the Defendants:

1. Special and compensatory damages in the amount of FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS.

2. Punitive damages in the amount of FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS.

3. Reasonable attorney's fees and costs; and

4. Such other and further relief as this Court seems just and proper.

DATED:    New York, New York
          July 15, 2011

                              Respectfully submitted,

                              Christopher D. Galiardo (CG7285)

                              MYERS, SINGER & GALIARDO, LLP
                              *Attorneys for Plaintiff*
                              299 Broadway, Suite 200
                              New York, New York 10007
                              (212) 986-5900

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CINDY PEIDRAHITA,

Plaintiff,

-against-

THE CITY OF NEW YORK, DET. WILMER ZAMBRANO, DET. JAMES LAKE and P.O.s "JOHN DOE" #1-5 (said names being fictitious, as the true names are presently unknown) Individually and in their Official Capacities.

Defendants,

COMPLAINT AND DEMAND FOR JURY TRIAL

MYERS, SINGER & GALIARDO, LLP
Christopher D. Galiardo, Esq.
299 Broadway, Suite 200
New York, New York 10007
(212) 986-5900